1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARIN ALLIANCE FOR MEDICAL MARIJUANA, a not-for-profit association; JOHN D'AMATO, an individual, MEDTHRIVE, INC., a not-for-profit cooperative corporation doing business as MedThrive Cooperative; THE JANE PLOTITSA SHELTER TRUST, a revocable living trust; THE FELM TRUST, an irrevocable living trust; and THE DIVINITY TREE PATIENTS' WELLNESS COOPERATIVE, INC., a not-for-profit cooperative corporation, | Case No:  C 11-05349 SBA<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING AMENDED MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Docket 23, 38. |
| Plaintiffs,<br>vs. | |
| ERIC HOLDER, Attorney General of the United States; MICHELLE LEONHART, Administrator of the Drug Enforcement Administration; HON. MELINDA HAAG, U.S. Attorney for the Northern District of California, | |
| Defendants. | |

Three medical marijuana dispensaries, one of their landlords and a medical marijuana patient ("Plaintiffs") brought the instant action to challenge recent threats by the United States Department of Justice to take legal action against landlords of medical marijuana dispensaries in the Northern District of California.  The parties are presently before the Court on Defendants' motion to dismiss and Plaintiffs' amended motion for a temporary restraining order ("TRO") and preliminary injunction.  Dkt. 23, 38.  Having read

and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Defendants' motion to dismiss and DENIES Plaintiffs' amended motion for a TRO and preliminary injunction, for the reasons stated below.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  See Fed.R. Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.      BACKGROUND

### A.      Statutory Overview

The instant action arises from the tension that exists between federal and California laws governing marijuana use.  These distinct statutory frameworks are briefly summarized below.

#### 1.      The Federal Controlled Substances Act

After taking office in 1969, President Nixon declared a national "war on drugs." Gonzales v. Raich, 545 U.S. 1, 10 (2005) [hereinafter "Raich I"].  Shortly thereafter, Congress passed the Comprehensive Drug Abuse Prevention and Control Act of 1970, also known as the Controlled Substances Act ("the Act" or "CSA").  Pub. L. No. 91-513, 84 Stat. 1236.  "Enacted in 1970 with the main objectives of combating drug abuse and controlling the legitimate and illegitimate traffic in controlled substances, the CSA creates a comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession of substances classified in any of the Act's five schedules."  Gonzales v. Oregon, 546 U.S. 243, 250 (2006).  The CSA places substances in one of five classifications or schedules, see 21 U.S.C. § 812, "based on their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision," Gonzales, 546 U.S. at 250.  Substances listed in Schedule I are the most restricted in terms of access and use, while those in Schedule V are the least restricted. Id.  In enacting the CSA, "Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels."  Raich I, 545 U.S. at 12-13.

Marijuana is classified as a Schedule I substance under the Act, and therefore is subject to the most restrictions.  See 21 U.S.C. § 812(c).  Although substances on Schedules

1  II through V may be dispensed and prescribed for medical use, "[S]chedule I drugs cannot

2  be dispensed under a prescription."  <u>United States v. Oakland Cannabis Buyers' Co-op.</u>, 532

3  U.S. 483, 492 n. 5 (2001) [hereinafter "<u>Oakland Cannabis</u>"].  The inclusion of marijuana on

4  Schedule I reflects the federal government's determination that "marijuana has 'no currently

5  accepted medical use' at all."  <u>Id.</u>  As such, the federal CSA makes it illegal to manufacture,

6  distribute, or possess marijuana.  21 U.S.C. §§ 841, 844.  Further, it is illegal under the

7  CSA to open, use, lease or maintain any place for the purpose of manufacturing,

8  distributing, or using any controlled substance.  <u>Id.</u> § 856(a)(1).  The only exception to

9  these prohibitions is the possession and use of marijuana in federally-approved research

10  projects.  <u>Id.</u> § 823(f).

## 2. California's Compassionate Use Act

12  In contrast to the federal law, California law expressly authorizes the use of

13  marijuana for medical purposes.  In 1996, California voters passed Proposition 215, known

14  as the Compassionate Use Act of 1996, which permits seriously ill patients to obtain

15  medical marijuana upon written or oral recommendation of a physician.  <u>See</u> Cal. Health &

16  Safety Code § 11362.5.  The Compassionate Use Act provides, in part:

> (b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:
>
> (A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.
>
> (B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.
>
> (C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

Cal. Health & Safety Code § 11362.5(b)(1)(A)-(C).  In 2003, the California legislature added the Medical Marijuana Program, id. §§ 11362.7-11362.83, to "address issues not included in the CUA [i.e., Compassionate Use Act] so as to promote the fair and orderly implementation of the CUA."  People v. Wright, 40 Cal. 4th 81, 85 (2006).

### B.   Legal Developments

The conflict between the federal CSA and California's Compassionate Use Act with respect to the issue of medical marijuana has spawned several Supreme Court and Ninth Circuit decisions, as well as other litigation.  These decisions are controlling with respect to most of the claims alleged in the Amended Complaint filed in this action.  These cases are summarized below.

### 1.   Oakland Cannabis

In January 1998, the United States brought an action under the CSA in the Northern District of California against the Oakland Cannabis Cultivators Club ("the cooperative") and its executive director seeking to enjoin them from distributing and manufacturing marijuana.  Oakland Cannabis, 532 U.S. at 487.  Judge Charles Breyer granted the government's motion for preliminary injunction, and later denied the cooperative's motion to modify the injunction to allow for the distribution of "medically necessary" marijuana.  Id.  The cooperative appealed, and the Ninth Circuit reversed and remanded the ruling on the motion to modify the injunction.  Id. at 488.  The Ninth Circuit held that medical necessity was a legally cognizable defense and the district court had mistakenly believed it possessed no discretion to issue an injunction more limited in scope than the CSA.  Id.  In addition, the Ninth Circuit found that the district court should have weighed the public interest and considered factors such as the serious harm in depriving patients of marijuana in deciding whether to modify the injunction.  Id.

The Supreme Court reversed the decision of the Ninth Circuit, holding that there is no medical necessity exception to the CSA's prohibitions on manufacturing and distributing marijuana.  Oakland Cannabis, 532 U.S. at 490.  In reaching its decision, the Court explained that a necessity defense is inapt where the legislature has made a "determination

of values."  Id.  With respect to the value of medical marijuana, the Court explained that Congress, in enacting the CSA, had made a legislative determination that "marijuana has no medical benefits worthy of an exception (outside the confines of a government-approved research project)."  Id. at 491.  While some drugs may be dispensed for medical use, the same is not true for marijuana, which, for purposes of the CSA, has "no currently accepted medical use at all."  Id. (internal quotations omitted).  Additionally, the Court held that the Ninth Circuit erred in instructing the district court to consider "any and all factors that might relate to the public interest or the conveniences of the parties, including the medical needs of the cooperative's patients" because "[c]ourts of equity cannot, in their discretion, reject the balance that Congress has struck in the [CSA]."  Id. at 497-498.

## 2. <u>Raich I</u>

Four years after rendering its decision in <u>Oakland Cannabis</u>, the Supreme Court again addressed the interplay between the Compassionate Use Act and the CSA in <u>Gonzales v. Raich</u>, another case originating from this District.  In that case, plaintiffs-respondents—two California residents who, in accordance with their physician's recommendations used marijuana for serious medical conditions—sought injunctive and declaratory relief prohibiting enforcement of the CSA to the extent that it prevented them from possessing, obtaining, or manufacturing marijuana for their personal medical use. <u>Raich I</u>, 545 U.S. at 7-8.  They alleged that the CSA's categorical prohibition against the manufacture and possession of marijuana as applied to the intrastate manufacture and possession of marijuana for medical purposes under California law exceeded Congress' authority under the Commerce Clause.  Id. at 8.  Judge Martin Jenkins denied the respondents' motion for preliminary injunction.  Id.  On appeal, the Ninth Circuit reversed and ordered the district court to enter the requested injunction on the grounds that respondents had demonstrated a strong likelihood of success on their claim that, as applied to them, the CSA is an unconstitutional exercise of Congress' Commerce Clause authority. Id.

1   The Supreme Court reversed the Ninth Circuit and held that the legislature's
2   authority under the Commerce Clause includes the power to prohibit local cultivation and
3   use of marijuana.  Raich I, 545 U.S. at 9.  The Court reasoned that the CSA was within
4   Congress' Commerce Clause power because production of marijuana, even if limited to
5   home consumption, "has a substantial effect on the supply and demand in the national
6   market for that commodity."  Id. at 19.  In the Supreme Court's view, the exemptions
7   permitting marijuana use under the Compassionate Use Act "will have a significant impact
8   on both the supply and demand sides of the market for marijuana," since they provide
9   physicians with an economic incentive to grant their patients permission to use the drug
10  which, in turn, "can only increase the supply of marijuana in the California market."  Id. at
11  31.  The Court remanded the case to the Ninth Circuit for further proceedings consistent
12  with its opinion.  Id. at 33.

13           **3.    Raich II**

14          Following remand from the Supreme Court, plaintiff Raich renewed her claims
15  based on common law necessity, fundamental rights protected by the Fifth and Ninth
16  Amendments, and rights reserved to the states under the Tenth Amendment.  Raich v.
17  Gonzales, 500 F.3d. 850, 857 (9th Cir. 2007) [hereinafter "Raich II"].[1]  The court
18  concluded that Raich had failed to meet her burden of establishing a likelihood of success
19  on these claims, and affirmed the district court's denial of her motion for preliminary
20  injunction.  Id.

21          In her common law necessity claim, Raich argued that the federal government was
22  precluded from enforcing the CSA against her because she faced a Hobson's choice of
23  either complying with the CSA and enduring excruciating pain and possibly death—or
24  violating its provisions by using marijuana.  Raich II, 500 F.3d at 858.  While
25  acknowledging that Raich had understandably chosen "the lesser evil" of using marijuana

26  _____

27          [1] In its initial decision, the Ninth Circuit did not reach any issues beyond the
    Commerce Clause.  Raich II, 500 F.3d at 856.  On remand, the court considered the
28  remaining arguments relating to the motion for preliminary injunction.  Id.

and had otherwise satisfied the factual predicate for a necessity defense, the court questioned whether such a defense remained legally viable after the Supreme Court's decision in Oakland Cannabis.  Id. at 859-60.  Consequently, the court concluded that Raich's necessity claim "is best resolved within the context of a specific prosecution under the [CSA]," as opposed to a civil action seeking to enjoin enforcement of the CSA.  Id. at 860.

Next, the court considered Raich's claim for substantive due process under the Fifth Amendment, which states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  Citing the two-step approach enunciated in Washington v. Glucksberg, 521 U.S. 702, 719 (1997), the Raich II court considered (1) whether the "right is deeply rooted in this nation's history and traditions implicit in the concept of ordered liberty," and (2) "the description of the asserted fundamental right."  Raich II, 500 F.3d at 862-863.  Considering the second step first, the court found that it was constrained under Supreme Court precedent to "narrowly" identify the right at stake.  Id. at 864.  Though Raich broadly described her right as one to "make life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and preserve her life," the court concluded that Raich's asserted right was more accurately characterized as "the right to use marijuana to preserve bodily integrity, avoid pain and preserve her life."  Id. at 864 (emphasis in original).

The court then considered the question of whether Raich's asserted right was one that was deeply rooted in United States' history and tradition and implicit in the concept of ordered liberty.  Raich II, 500 F.3d at 864.  To answer that question, the court looked to the Supreme Court's landmark decision in Lawrence v. Texas, 539 U.S. 558 (2003), which involved a challenge to a Texas state law that criminalized sodomy between consenting, adult homosexuals.  Id. at 562-563; Raich II, 530 F.3d at 865-866.  Prior to Lawrence, the Supreme Court had upheld Georgia's then-applicable sodomy statute, holding that there was no constitutionally protected right for "homosexuals to engage in acts of consensual sodomy."  Bowers v. Hardwick, 478 U.S. 186, 192 (1986).  The Lawrence court, however,

1    observed that even if a particular interest has not been deemed as fundamental in the past,

2    "an emerging awareness" of a liberty interest in modern times may require protection of an

3    asserted right.  <u>Lawrence</u>, 539 U.S. at 572.  The Court then pointed out that of the twenty-

4    five states that had laws criminalizing sodomy when it decided <u>Bowers</u>, only thirteen still

5    had such laws and a mere four enforced their laws only against homosexual conduct.  <u>Id.</u> at

6    573.  In those states that maintained sodomy laws, "there [was] a pattern of nonenforcement

7    with respect to consenting adults acting in private."  <u>Id.</u>

8        Raich argued that over the course of the last decade, there has been an "emerging

9    awareness of marijuana's medical value," as evidenced by the growing number of states that

10   have passed laws permitting the use of marijuana for medical reasons.  <u>Raich II</u>, 500 F.3d at

11   865.  The Ninth Circuit recognized the potential viability of Raich's argument, but

12   ultimately found that the right to use medical marijuana had not yet reached the point of

13   being "fundamental" and "implicit in the concept of ordered liberty."  <u>Id.</u> at 866.  While

14   acknowledging that since 1996 medical marijuana has been legalized in eleven states, the

15   court concluded that medical marijuana use had not "obtained the degree of recognition

16   today that private sexual conduct had obtained by 2004 in <u>Lawrence</u>."  <u>Id.</u> at 865.  The

17   <u>Raich II</u> court did note, however, that medical marijuana may attain similar status "sooner

18   than expected."  <u>Id.</u> at 866.

19       Finally, the court addressed Raich's claim that the CSA infringes upon the State of

20   California's police powers, as conferred by the Tenth Amendment.  <u>Raich II</u>, 500 F.3d at

21   866.[2]  The Ninth Circuit agreed that the Compassionate Use Act is "aimed at providing for

22   the health of the state's citizens [and] appears to fall squarely within the general rubric of

23   the state's police powers"; nonetheless, the Court rejected Raich's contention that the CSA

24   contravened the Tenth Amendment.  <u>Id.</u> at 867.  The court found that "after <u>Gonzales v.</u>

25   <u>Raich</u>, it would seem that there can be no Tenth Amendment violation in this case," and for

26

27       [2] The Tenth Amendment states in its entirety as follows:  "The powers not delegated
to the United States by the Constitution, nor prohibited by it to the States, are reserved to
28   the States respectively, or to the people."  U.S. Const. amend. X.

1  that reason, concluded that "Raich [had] failed to demonstrate a likelihood of success on

2  her claim that the [CSA] violates the Tenth Amendment."  Id.

3              4.       The Santa Cruz Lawsuit

4          During the pendency of the district court proceedings in Raich v. Ashcroft, N.D. Cal.

5  No. C 02-4872 MJJ, the County of Santa Cruz and others filed suit in this Court seeking to

6  enjoin various federal government defendants from conducting further raids or seizures

7  against Plaintiff Wo/Men's Alliance for Medical Marijuana ("WAMM") and its member-

8  patients, and from conducting raids or seizures against patients using marijuana for

9  medicinal purposes in compliance with California's Compassionate Use Act within the City

10 and County of Santa Cruz.  County of Santa Cruz v. Aschcroft, No. C 03-1802 JF

11 [hereinafter "Santa Cruz"].  On January 25, 2010, the parties filed a Joint Stipulation of

12 Dismissal Without Prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).  Am.

13 Compl. Ex. 5 at 4-6, Dkt. 21-5.  The stipulation states that "[a]s a result of the issuance of

14 the Medical Marijuana Guidance, plaintiffs agree to dismiss the case without prejudice."

15 Id.

16         The "Medical Marijuana Guidance" attached to the stipulation is a memorandum

17 from the United States Department of Justice ("DOJ"), dated October 19, 2009, prepared by

18 then Deputy Attorney General David Ogden (the "Ogden memo").  The purpose of the

19 Ogden memo, which is addressed to "SELECTED UNITED STATES ATTORNEYS," is

20 to provide "clarification and guidance to federal prosecutors in States that have enacted

21 laws authorizing the medical use of marijuana."  Id.  In pertinent part, the DOJ advises that:

22             The prosecution of significant drug traffickers of illegal drugs,
             including marijuana, and the disruption of illegal drug
23             manufacturing and trafficking networks, continues to be a core
             priority of the Department's efforts against narcotics and
24             dangerous drugs, and the Department's investigative and
             prosecutorial resources should be directed towards these
25             objectives.  As a general matter, pursuit of these priorities
             should not focus federal resources in your States on individuals
26             whose actions are in clear and unambiguous compliance with
             existing state laws providing for the medical use of marijuana.

27

28

Id. at 2.  The above notwithstanding, the DOJ explicitly states that: "This memorandum does not alter in any way the Department's authority to enforce federal law . . . [and] does not 'legalize' marijuana or provide a legal defense to a violation of federal law . . . .  Rather, this memorandum is intended solely as a guide to the exercise of investigative and prosecutorial discretion."  Id.

**C.    The Instant Lawsuit**

In late September and early October 2011, the United States Attorneys for each of the four federal districts in California contacted various entities involved in California's Medical Marijuana program, alleging that marijuana dispensaries, landlords who rent to dispensaries, patients and other supporting commercial entities are in violation of federal law.  Am. Compl. ¶ 21.  By letters dated September 28, 2011, Melinda Haag, the United States Attorney for the Northern District of California, contacted landlords providing space to the Marin Alliance for Medical Marijuana ("MAMM"), Medthrive Cooperative ("Medthrive") and The Divinity Tree, notifying them that medical marijuana dispensaries are illegal under federal law and that they may be subject to "criminal prosecution, imprisonment, fines, and forfeiture of assets, including the real property on which the dispensary is operating."  E.g., Am. Compl. Exs. 1-3.  The letters (hereinafter "Haag letters") warn:  "Please take necessary steps to discontinue the sale and/or distribution of marijuana at the above-referenced location within 45 days of this letter."   Id.

In response to the Haag letters, MAMM and John D'Amato, a medical marijuana patient, filed suit in this Court on November 4, 2011 seeking to enjoin the Attorney General, the Administrator of the Drug Enforcement Agency, and the U.S. Attorney for the Northern District of California (collectively "Defendants") from arresting, prosecuting, or otherwise seeking sanctions or forfeitures against them and similarly situated medical marijuana growers and providers who operate in compliance with California state law.  Compl., Dkt. 1.  They also seek a declaration that enforcement of the CSA is unconstitutional to the extent that it prevents Plaintiffs and similarly situated individuals

1   from obtaining medical marijuana with a doctor's recommendation.  Id.  Four days later on

2   November 8, 2011, Plaintiffs filed a motion for a TRO and preliminary injunction.  Dkt. 5.[3]

3        On November 11, 2011, Plaintiffs filed an Amended Complaint, adding four

4   plaintiffs—two additional dispensaries, Medthrive and The Divinity Tree, and Medthrive's

5   landlords, the Jane Plotitsa Shelter Trust and the Felm Trust.  Am. Compl. ¶¶ 9-12.[4]  Like

6   the original Complaint, the Amended Complaint alleges six claims for relief:  (1) judicial

7   estoppel, (2) equitable estoppel, (3) violation of the Ninth Amendment, (4) violation of the

8   Tenth Amendment, (5) violation of the Equal Protection Clause of the Fourteenth

9   Amendment, and (6) violation of the Commerce Clause.  Id. ¶¶ 24-52.  Along with their

10  Amended Complaint, Plaintiffs filed an amended motion for a TRO and preliminary

11  injunction.  Dkt. 23.  On November 28, 2011, the Court issued an order denying Plaintiff's

12  motion for a TRO.  Dkt. 34.

13       On January 10, 2012, the Defendants filed a motion to dismiss and an opposition to

14  Plaintiffs' amended motion for a TRO and preliminary injunction.  Dkt. 38.  On January 24,

15  2012, Plaintiffs filed a reply to the amended motion for a TRO and preliminary injunction

16  and an opposition to the motion to dismiss.  Dkt. 40.  The Defendants filed a reply to the

17  motion to dismiss on January 31, 2012.  Dkt. 44.

18  II.   **LEGAL STANDARD**

19       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

20  plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

21  ────────────────

22       [3] On the same date that Plaintiffs filed this action, their counsel filed three virtually identical actions on behalf of different entities and individuals in the Eastern, Southern and Central Districts of California.  See Sacramento Non-Profit Collective v. Holder, E.D. Cal.

23  No. C 11-2939 GEB; Conejo Wellness Cntr. Coop. v. Holder, C.D. Cal. No. C 11-9200 DMG; Alternative Cmty. Health Care v. Holder, S.D. Cal. No. C 11-2585 DMS.

24       [4] The Court also notes that at least one of the named Plaintiffs in this suit appears to

25  be foreclosed from obtaining the requested relief in light of a previous order from Judge Breyer of this Court permanently enjoining the MAMM "from engaging in the distribution

26  of marijuana, the possession of marijuana with the intent to distribute, or the manufacture of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1)."  See Opp'n

27  Ex. A, Dkt. 31-1; see also Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011) ("Collateral estoppel, or issue preclusion, bars the relitigation of both issues of law

28  and issues of fact actually adjudicated in previous litigation between the same parties.").

────────────────

1   a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

2   1990).  In determining whether a complaint states a claim on which relief may be granted,

3   the Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s]

4   them in the light most favorable to the non-moving party."  Daniels–Hall v. National Educ.

5   Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

6          However, the Court is not required to accept as true "allegations that are merely

7   conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead

8   Sciences Securities Litigation, 536 F.3d 1049, 1055 (9th Cir. 2008).  The complaint is

9   properly dismissed if it fails to plead "enough facts to state a claim to relief that is plausible

10  on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible

11  on its face "when the plaintiff pleads factual content that allows the court to draw the

12  reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

13  Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss,

14  the non-conclusory 'factual content,' and reasonable inferences from that content, must be

15  plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv.,

16  572 F.3d 962, 969 (9th Cir. 2009).

17         As a general rule, courts may not consider any material beyond the pleadings in

18  ruling on a Rule 12(b)(6) motion.  U.S. v. Corinthian Colleges, 655 F.3d 984, 998-999 (9th

19  Cir. 2011).  However, courts "may consider materials that are submitted with and attached

20  to the complaint," as well as "unattached evidence on which the complaint 'necessarily

21  relies' if: (1) the complaint refers to the document; (2) the document is central to the

22  plaintiff's claim; and (3) no party questions the authenticity of the document."  Id. at 999.

23  Pursuant to Federal Rule of Evidence 201, courts may also take judicial notice of matters of

24  public record.  Id.

25         Where a complaint or claim is dismissed, leave to amend generally is granted, unless

26  further amendment would be futile.  See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-

27  1088 (9th Cir. 2002); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a

28

1    court dismisses the complaint, it should grant leave to amend, unless it determines that the

2    pleading could not possibly be cured by the allegation of other facts).

3    **III.    DISCUSSION**

4          Defendants move to dismiss the Amended Complaint on the ground that Plaintiffs

5    have failed to state a cognizable claim for relief.  The cognizability of the claims alleged in

6    the Amended Complaint is discussed below.

7          **A.    Plaintiffs' Request for Judicial Notice**

8          A court may judicially notice a fact that is not subject to reasonable dispute because

9    it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be

10   accurately and readily determined from sources whose accuracy cannot reasonably be

11   questioned.  Fed.R.Evid. 201(b).

12         In connection with their opposition to Defendants' motion to dismiss, Plaintiffs

13   request that the Court take judicial notice of ten documents identified by Plaintiffs as

14   follows: (1) "January 25, 2010 Joint Stipulation of Dismissal Without Prejudice in County

15   of Santa Cruz v. Eric H. Holder, Jr. et al. ('Santa Cruz'), United States District Court for the

16   Northern District of California action no. 03-1802 JF, with exhibit (October 19, 2009

17   Ogden memo)"; (2) "Transcript of October 30, 2009 Status Conference in Santa Cruz"; (3)

18   "Declaration of Rick Doblin in Support of Plaintiff's Petition for Temporary Restraining

19   Order/ Preliminary Injunction, filed in this action as docket number 12 on November 8,

20   2011"; (4) "November 30, 2011 New York Times article by Michael Cooper titled '2

21   Governors Asking U.S. to Ease Rules on Marijuana to Allow for its Medical Use,' and

22   December 1, 2011 Just Say Now article by Jon Walker titled 'VT Gov. Shumlin to Join

23   Petition to Reschedule Marijuana' "; (5) "July 25, 2010 Associated Press article republished

24   by the San Francisco Chronicle titled 'Veterans Affairs clinics permit legal marijuana' "; (6)

25   "Declaration of Paul Armentano in Support of Plaintiff's Petition for Temporary

26   Restraining Order / Preliminary Injunction (with exhibit)"; (7) "October 8, 2004

27   Declaration of Lester Grinspoon, M.D., In Support of the Brief of Amici Curiae National

28   Organization For the Reform of Marijuana Laws (NORML) And the NORML Foundation

in Ashcroft v. Raich, United States Supreme Court, Case No. 03-1454"; (8) October 17, 2011 news release published by the California Medical Association entitled 'CMA urges legalization and regulation of medical cannabis to allow for wider clinical research'; (9) "October 7, 2003 United States Patent No. 6630507"; and (10) "National Institutes of Health / National Institute on Drug Abuse titled 'NIDA InfoFacts: Marijuana,' last edited November 2010."  Pls.' Request for Judicial Notice ("RJN") Nos. 1-10, Dkt. 41. Defendants did not file an opposition to Plaintiffs' RJN.

        In their request for judicial notice, Plaintiffs' contend, without elaboration or analysis, that it is proper for this Court to take judicial notice of all the above-mentioned documents under Federal Rule of Evidence 201(b).  The Court disagrees.  As for the Joint Stipulation of Dismissal Without Prejudice filed in the <u>Santa Cruz</u> action and the attachment thereto (i.e., the Ogden memo), the Court need not take judicial notice of these documents because the Court may consider them as they are attached to the Amended Complaint.  See <u>Corinthian Colleges</u>, 655 F.3d at 999.  As for the transcript of proceedings from the October 30, 2009 hearing in the <u>Santa Cruz</u> action, the Court takes judicial notice of this document because Plaintiffs' judicial estoppel claim relies on representations made by the DOJ at that hearing and no party questions the authenticity of the document.  See <u>id.</u> As for the remaining documents, i.e., Plaintiffs' RJN Nos. 3-10, Plaintiffs have failed to demonstrate that it is proper for the Court to take judicial notice of these documents under Rule 201(b).  Nor have Plaintiffs argued or shown that the Court may otherwise take judicial notice of these documents.  See <u>id.</u> (discussing the type of material that courts may consider beyond the pleadings in ruling on a Rule 12(b)(6) motion).  Accordingly, the Court will not consider these documents in ruling on the motion to dismiss.

      **B.**     **Motion to Dismiss**

            **1.**     **Judicial Estoppel Claim**

        Plaintiffs' first claim for relief alleges that Defendants are judicially estopped from instituting any legal proceedings against them under the CSA in light of the

stipulation of dismissal and attached Ogden memo filed in the <u>Santa Cruz</u> action.  <u>See</u> Am.
Compl. ¶¶ 24-27.  According to Plaintiffs, "the DOJ promised a federal judge that it had
changed its policy towards the enforcement of its federal drug laws relative to California
medical cannabis patients."  <u>Id.</u> ¶ 25.  Plaintiffs claim that under the doctrine of judicial
estoppel the federal government may not use federal resources to enforce the CSA against
medical cannabis patients that are in compliance with state law.  <u>Id.</u> ¶¶ 25-26.

  "Judicial estoppel is an equitable doctrine that precludes a party from gaining an
advantage by asserting one position, and then later seeking an advantage by taking a clearly
inconsistent position."  <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 782 (9th Cir.
2001).  Application of the doctrine is made on a case-by-case basis and is entrusted to the
discretion of the court.  <u>See</u> <u>Russell v. Rolfs</u>, 893 F.2d 1033, 1037 (9th Cir. 1990).  In
determining whether a party is subject to judicial estoppel, the court considers: "(1) whether
a party's later position is 'clearly inconsistent' with its original position; (2) whether the
party has successfully persuaded the court of the earlier position; and (3) whether allowing
the inconsistent position would allow the party to 'derive an unfair advantage or impose an
unfair detriment on the opposing party.' "  <u>United States v. Liquidators of European Fed.</u>
<u>Credit Bank</u>, 630 F.3d 1139, 1148 (9th Cir. 2011) (citations omitted).

  Defendants contend that dismissal of this claim is appropriate because the doctrine
of judicial estoppel does not apply under the facts of this case.  <u>See</u> Defs.' Mot. at 10-12.
The Court agrees with Defendants.  The Court previously considered and rejected Plaintiffs'
arguments regarding the applicability of the doctrine of judicial estoppel in its November
28, 2011 Order denying Plaintiffs' motion for TRO.  <u>See</u> Nov. 28, 2011 Order at 12-15,
Dkt. 34.  Plaintiffs have not provided any new legal argument demonstrating that the
doctrine applies under the circumstances of this case.  Thus, for the reasons stated in this
Court's November 28, 2011 Order, <u>id.</u>, the Amended Complaint does not state an actionable
judicial estoppel claim.

  As set forth more fully in the November 28, 2011 Order, this claim fails because,
among other things, Plaintiffs have not alleged facts showing that: (1) there is a clear

1   inconsistency between the government's position in the Santa Cruz action and the actions

2   threatened in the Haag letters[5]; (2) Defendants successfully persuaded the district court in

3   the Santa Cruz action to dismiss the action based upon any promise to indefinitely forego

4   enforcement of the CSA against persons or entities involved in the production, sale or use

5   of medical marijuana; and (3) Defendants gained an unfair advantage by virtue of

6   submitting the Ogden memo as a basis for the stipulation for dismissal in the Santa Cruz

7   action.  Indeed, as the Court previously stated, since Plaintiffs were not parties to the Santa

8   Cruz action, it is unclear how Defendants could have obtained any advantage over Plaintiffs

9   based on their decision to send the Haag letters to the landlords.  Moreover, Plaintiffs

10  overlook that the stipulation for dismissal filed in the Santa Cruz action permitted the

11  plaintiffs in that action to reinstitute their lawsuit in the event the government declined to

12  follow the guidance set forth in the Ogden memo.  Thus, even if Plaintiffs herein had

13  standing to assert any prejudice on behalf of the plaintiffs in Santa Cruz, it is clear that any

14  alleged change in the Defendants' enforcement policy has not conferred an unfair advantage

15  upon them.

16      In their opposition brief, Plaintiffs argue that that their judicial estoppel claim is also

17  based on representations made by DOJ attorneys at the October 30, 2009 hearing in the

18  Santa Cruz action, which Plaintiffs assert "are far stronger than the actual language in the

19  [Ogden Memo]."  Pls.' Opp. at 8.  According to Plaintiffs, the operative complaint "states a

20  plausible claim that the DOJ [attorneys] represented that those in compliance with

21  California state law would neither be prosecuted nor have their property seized as the

22  subject of forfeiture."  Id. at 9.  A review of the transcript of the October 30, 2009 hearing

23  reveals that the DOJ attorneys did not make any representations regarding the non-

24  enforcement of the CSA beyond what is stated in the Ogden memo.  As such, Plaintiffs

25

26      [5] As noted in the Court's November 28, 2011 Order, the Ogden memo does not
    contain a promise not to enforce the CSA.  In fact, the memo explicitly states that the DOJ
    "does not alter in any way [its] authority to enforce federal law[.]"  See Am. Compl. Ex. 5

27  at 3.  In short, because the Ogden memo does not contain a promise not to enforce the CSA,
    Defendants' enforcement of the CSA is not inconsistent with the enforcement policy stated

28  in the Ogden memo.

1  have not stated a cognizable claim for judicial estoppel based on the representations made

2  by the DOJ attorneys at the October 30, 2009 hearing in the <u>Santa Cruz</u> action.

3    Accordingly, for the reasons stated above, Defendants' motion to dismiss Plaintiffs'

4  judicial estoppel claim is GRANTED.  Because amendment would be futile, this claim is

5  DISMISSED with prejudice.

6  **2.  Equitable Estoppel Claim**

7    Plaintiffs' second claim is for equitable estoppel—specifically, estoppel by

8  entrapment—and avers that they reasonably relied on the Ogden memo as a basis for

9  leasing or continuing to lease their properties to medical marijuana operators.  Am. Compl.

10  ¶¶ 28-32.  Defendants contend that dismissal of this claim is appropriate because the

11  "estoppel by entrapment" doctrine serves as an affirmative defense in a criminal proceeding

12  and thus has no application where, as here, no criminal proceeding has been initiated.

13  Defs.' Mot. at 12.  In addition, Defendants argue that dismissal is warranted because

14  Plaintiffs have not alleged facts demonstrating (1) that an authorized representative of the

15  government affirmatively told them that the proscribed conduct was permissible, and (2)

16  that they reasonably relied on the government's statement.  <u>Id.</u>

17    Estoppel by entrapment is a defense in criminal actions wherein a government

18  official or agent leads a defendant into criminal conduct by affirmatively misrepresenting

19  what is legal.  <u>See</u> <u>United States v. Tallmadge</u>, 829 F.2d 767, 773 (9th Cir. 1987).  To

20  succeed under this theory, the defendant must show "that the government affirmatively told

21  him the proscribed conduct was permissible, and that he reasonably relied on the

22  government's statement."  <u>United States v. Ramirez-Valencia</u>, 202 F.3d 1106, 1109 (9th

23  Cir. 2000) (emphasis added).

24    The Court finds that dismissal of this claim is appropriate.  First, Plaintiffs have

25  failed to oppose Defendants' motion with respect to this claim, which the Court construes as

26  Plaintiffs' absence of dispute with Defendants' arguments and an abandonment of the claim.

27  <u>See</u> <u>Walsh v. Nev. Dep. of Human Res.</u>, 471 F.3d 1033, 1037 (9th Cir. 2006) (failure to

28  raise issue in opposition to motion to dismiss).  Second, this claim fails on the merits for the

reasons stated in the November 28, 2011 Order.  <u>See</u> Nov. 28, 2011 Order at 16-17.
Specifically, the doctrine of equitable estoppel has no application here because this is not a
criminal proceeding and Plaintiffs are not criminal defendants.  Moreover, there is no
allegation that any criminal proceeding has been initiated against Plaintiffs.  Second,
nothing in the Ogden memo affirmatively informs medical marijuana growers and
distributors that their conduct is legal.  Third, even if the government had affirmatively
informed Plaintiffs that their conduct was legal—which it clearly did not—any reliance on
the Ogden memo would be unreasonable.  The memorandum was not directed to landlords
or to the medical marijuana community in general; rather, it was directed to various U.S.
Attorneys, and not as a statement of official policy, but "solely as a guide to the exercise of
investigative and prosecutorial discretion." <u>Id.</u>[6]  As such, Plaintiffs are hard pressed to
claim that it was reasonable to rely on a memorandum that was not even addressed to
them—and which unequivocally did not state that marijuana for medical reasons was
"legal."

Accordingly, Defendants' motion to dismiss Plaintiffs' equitable estoppel claim is
GRANTED.  Because amendment would be futile, this claim is DISMISSED with
prejudice.

### 3.    Ninth Amendment Claim

Plaintiffs' third claim alleges that Defendants have violated their right to substantive
due process by threatening to seize their property and pursue civil and criminal sanctions
against them.  Am. Compl. ¶¶ 33-38.  The Ninth Amendment, in tandem with the Fifth
Amendment, protects fundamental rights and liberties "which are, objectively, 'deeply

---

[6] Moreover, once Plaintiffs received the Haag letters, which placed them on notice
that their actions may violate the CSA and afforded them forty-five days to cease any
medicinal marijuana-related activities, they were on inquiry notice regarding the legality of
their conduct.  As such, to the extent that Plaintiffs reasonably relied on the Ogden memo,
such reliance was no longer reasonable after their receipt of the Haag letters.  <u>See</u> <u>United
States v. Weitzenhoff</u>, 35 F.3d 1275, 1290 (9th Cir. 1993) (noting that in order to invoke a
defense of estoppel by entrapment, "the defendant must show that he relied on the official's
statement and that his reliance was reasonable in that a person sincerely desirous of obeying
the law would have accepted the information as true and would not have been put on notice
to make further inquiries.").

rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.' " <u>Raich II</u>, 500 F.3d at 862.  Plaintiffs describe the fundamental rights at issue as the "rights to bodily integrity that may not be interfered with by the federal government" and "to consult with their doctors about their bodies and health."  Am. Compl. ¶ 37.

In their opposition brief, Plaintiffs argue that they have a fundamental right to use cannabis for medical purposes.  <u>See</u> Pls.' Opp. at 13-17.  According to Plaintiffs, the "future day" envisioned in <u>Raich II</u> when society accepts medical marijuana as a fundamental right has arrived.  <u>See id.</u> at 16-17.  Defendants argue that this claim is foreclosed by <u>Raich II</u>'s holding that, currently, society recognizes no such fundamental right.  Defs.' Mot. at 14. The Court agrees.  <u>Raich II</u> is binding precedent and therefore this claim fails as a matter of law.  <u>See</u> <u>Raich II</u>, 500 F.3d at 866 ("federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician").  Accordingly, Defendants' motion to dismiss Plaintiffs' Ninth Amendment claim is GRANTED.  Because amendment would be futile, this claim is DISMISSED with prejudice.

### 4.  Tenth Amendment Claim

Plaintiffs' fourth claim alleges that Defendants' "threatened actions to raid, arrest, prosecute, punish, seize medical cannabis of, forfeit property of, or seek civil or administrative sanctions against any Plaintiff" violates California's state police powers in contravention of the Tenth Amendment.  Am. Compl. ¶ 41.  Defendants contend that this claim is foreclosed by binding authority.  Defs.' Mot. at 17.  The Court agrees.  This claim is legally indistinguishable from the Tenth Amendment claim which the Ninth Circuit considered and rejected in <u>Raich II</u>.  <u>Raich II</u>, 500 F.3d at 867 (holding that "after [<u>Raich I</u>], it would seem that there can be no Tenth Amendment violation in this case."); <u>see</u> <u>also</u> <u>United States v. Jones</u>, 231 F.3d 508, 515 (9th Cir. 2000) ("We have held that if Congress acts under one of its enumerated powers, there can be no violation of the Tenth Amendment.").

1    In their opposition brief, Plaintiffs attempt to characterize <u>Raich II</u>'s rejection of the

2    Tenth Amendment claim as mere dicta.  Pls.' Opp. at 17.  However, the Court has already

3    considered and explicitly rejected this argument as "entirely specious."  Nov. 28, 2011

4    Order at 20.  Accordingly, Defendants' motion to dismiss Plaintiffs' Tenth Amendment

5    claim is GRANTED.  Because amendment would be futile, this claim is DISMISSED with

6    prejudice.

7                    **5.      Equal Protection Clause Claim**

8    Plaintiffs' fifth claim alleges that the actions threatened by Defendants in the Haag

9    letters violate their right to equal protection.  Am. Compl. ¶¶ 44-47.  Specifically, they

10   complain that Defendants are discriminating against "medical cannabis patients in

11   California without a rational basis" because they (1) allow patients in the federal

12   government's IND program[7] to receive medical marijuana and (2) have permitted patients

13   in Colorado access to medical marijuana through state-licensed distributors.  <u>Id.</u> ¶ 45.

14   Plaintiffs allege that Defendants have no rational basis for "enforcing federal laws

15   prohibiting cannabis possession and distribution" in California while simultaneously

16   allowing medical marijuana to be used in the IND program and by Colorado patients.  <u>Id.</u>

17   ¶ 46.

18   "[T]he Due Process Clause of the Fifth Amendment subjects the federal government

19   to constitutional limitations that are the equivalent of those imposed on the states by the

20   Equal Protection Clause of the Fourteenth Amendment."  <u>Consejo De Desarrollo</u>

21   <u>Economico De Mexicali, A.C. v. United States,</u> 482 F.3d 1157, 1170 n. 4 (9th Cir. 2007).

22   "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated

23   should be treated alike."  <u>City of Cleburne v. Cleburne Living Center, Inc.,</u> 473 U.S. 432,

24   439 (1985); <u>Philips v. Perry,</u> 106 F.3d 1420, 1424-1425 (9th Cir. 1997).  "The requirements

25   for a selective-prosecution claim draw on ordinary equal protection standards."  <u>United</u>

26

27       [7] The patients to which Plaintiffs refer are participants in the federal investigational
     new drug (IND) program who receive drugs under clinical investigation in a controlled
28   study.  <u>See</u> 21 U.S.C. § 355(b)-(d).

1   States v. Armstrong, 517 U.S. 456, 465 (1996).  "To make a claim for selective

2   prosecution, Plaintiffs must establish (1) that similarly situated persons were not

3   prosecuted, and (2) that the defendants were motivated by a discriminatory purpose."

4   Lacey v. Maricopa Cty., 649 F.3d 1118, 1142 (9th Cir. 2011).  Where no suspect class or

5   fundamental right is involved, plaintiff must demonstrate that "there is no rational basis for

6   the difference in treatment.' "  Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th

7   Cir. 2004) (internal quotations omitted).

8        Defendants contend that dismissal of this claim is appropriate because Plaintiffs

9   have failed to plead a prima facie equal protection clause claim.  Defs.' Mot. at 18.

10  Plaintiffs have failed to oppose Defendants' motion to dismiss this claim to the extent that

11  the claim rests on the selective prosecution theory, which the Court construes as Plaintiffs'

12  absence of dispute with Defendants' arguments and an abandonment of the claim.  See

13  Walsh, 471 F.3d at 1037.  Moreover, dismissal of Plaintiffs' equal protection clause claim

14  premised on selective prosecution is appropriate because Plaintiffs have not alleged

15  sufficient facts demonstrating that Colorado medical marijuana or IND patients are

16  similarly situated to them,[8] or that any alleged disparity in enforcement of the CSA by

17  Defendants is attributable to any impermissible discriminatory motive.

18       In their opposition brief, Plaintiffs contend that Defendants' "briefing regarding

19  equal protection focuses primarily on one component identified in the complaint, relating to

20  selective prosecution[;]" however, "[e]qual protection is a broader concept."  Pls.' Opp. at

21  18 n. 10.  Plaintiffs further argue that "there is no rational basis to classify cannabis as

22  having no medical value" and "the CSA's prohibition against medical use in compliance

23  with State law is invidious discrimination as applied to patients generally that use cannabis

24  to resolve illnesses and health problems versus patients who use other drugs to do the same

25
_____

26       [8] Unlike Plaintiffs, the IND participants have committed no crime because the CSA
    expressly allows marijuana use in connection with research projects funded by the
27  government.  21 U.S.C. § 823(f); Oakland Cannabis, 532 U.S. at 490 (noting that the CSA
    contains "but one express exception, and it is available . . . for Government-approved
    research projects.").  Hence, IND participants are not "similarly situated" because, unlike
28  Plaintiffs, their use of marijuana is expressly permitted by the CSA.  See United States v.
    Wilson, 639 F.2d 500, 503 (9th Cir. 1981).

1   thing." Id. at 21.  Plaintiffs have not pled such a claim in the operative complaint.

2   However, even assuming for the sake of argument that they have, their equal protection

3   clause challenge to the classification of marijuana as a Schedule I drug under the CSA is

4   foreclosed by Ninth Circuit precedent.  See United States v. Miroyan, 577 F.2d 489, 495

5   (9th Cir. 1978); see also United States v. Fogarty, 692 F.2d 542, 547 (8th Cir. 1982) ("[W]e

6   conclude that [defendant] has not met his heavy burden of proving the irrationality of the

7   Schedule I classification of marijuana.").

8         Finally, to the extent that Plaintiffs' equal protection clause claim is premised on the

9   theory that the federal government lacks a rational basis to "actively restrict[] scientific

10  research into the medical value and use of cannabis to alleviate human suffering and pain,"

11  Am. Compl. ¶¶ 45-46, Defendants maintain it should be dismissed for lack of standing.

12  Defs.' Mot. at 21.  Defendants argue that Plaintiffs have not alleged that they have been

13  injured by the government's conduct because there are no allegations that any Plaintiff

14  attempted to conduct research or was precluded from conducting it.  Id.  Defendants also

15  argue that the operative complaint is devoid of allegations suggesting a connection between

16  the alleged research restriction and the threatened federal enforcement of the CSA.  Id. at

17  21-22.  Plaintiffs do not dispute Defendants' contention that they lack standing in this

18  regard.  The Court construes Plaintiffs non-opposition as Plaintiffs' absence of dispute with

19  Defendants' arguments and an abandonment of the claim, and therefore dismisses Plaintiffs'

20  claim in this regard.  See Walsh, 471 F.3d at 1037.  Additionally, the Court dismisses this

21  theory on the merits because Plaintiffs have failed to allege facts establishing that they have

22  standing to assert this claim.  See, e.g., DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342

23  (2006) (to establish standing "[a] plaintiff must allege personal injury fairly traceable to the

24  defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.").

25        Accordingly, for the reasons stated above, Defendants' motion to dismiss Plaintiffs'

26  equal protection clause claim is GRANTED.  Because Plaintiffs have not indicated that

27  they can cure the deficiencies identified by Defendants, this claim is DISMISSED with

28  prejudice.

6.      **Commerce Clause Claim**

Plaintiffs' sixth claim alleges that Defendants' attempt to regulate the intrastate medical marijuana business violates the Commerce Clause.  Am. Compl. ¶¶ 48-52. Defendants contend that this claim is foreclosed by binding authority.  Defs.' Mot. at 17. The Court agrees.  This claim was categorically rejected by the Supreme Court in <u>Raich</u> I, which held that Congress has a rational basis to regulate the purely intrastate manufacture and possession of marijuana.  <u>Raich I</u>, 545 U.S. at 22.  Plaintiffs have not opposed Defendants' motion with respect to this claim, which the Court construes as an abandonment of the claim.  <u>See</u> <u>Walsh</u>, 471 F.3d at 1037.  Accordingly, Defendants' motion to dismiss Plaintiffs' Commerce Clause claim is GRANTED.  Because amendment would be futile, this claim is DISMISSED with prejudice.

C.      **Amended Motion for A TRO and Preliminary Injunction**

In light of the Court's dismissal of all the claims alleged in the Amended Complaint with prejudice, Plaintiffs' amended motion for a TRO and preliminary injunction is DENIED as MOOT.

IV.    **<u>CONCLUSION</u>**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Defendants' motion to dismiss is GRANTED.  The Amended Complaint is DISMISSED with prejudice.

2.      Plaintiffs' amended motion for a TRO and preliminary injunction is DENIED as MOOT.

3.      The Clerk shall close the file and terminate all pending matters.

Dated:  7/10/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge